AO 91 (Rev. 11/11) Criminal Complaint

**FILED**
7/31/2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

AUSA Wesley A. Morrissette (312) 353-5306

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

UNITED STATES OF AMERICA

v.

FLOYD JORDAN

CASE NUMBER: 25 CR 442

**UNDER SEAL**

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about July 14, 2025, at Chicago, in the Northern District of Illinois, Eastern Division, the defendant violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Section 922(g)(1) | unlawful possession of a firearm by a felon |

This criminal complaint is based upon these facts:

 X   Continued on the attached sheet.

Vincent Turner by MV

VINCENT TURNER
Task Force Officer, Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF)

Pursuant to Fed. R. Crim. P. 4.1, this Complaint is presented by reliable electronic means. The above-named agent provided a sworn statement attesting to the truth of the Complaint and Affidavit by telephone.

Date: July 31, 2025

*Judge's signature*

City and state: Chicago, Illinois

MARIA VALDEZ, U.S. Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

**AFFIDAVIT**

I, VINCENT TURNER, being duly sworn, state as follows:

1.     I am a Task Force Officer with the Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF"). I have been employed with the Chicago Police Department since approximately September 2014 and have been detailed as an ATF Task Force Officer since approximately April 2023.

2.     As part of my duties as an ATF Task Force Officer, I investigate criminal violations of law as they relate to federal firearms offenses, including the unlawful possession of firearms or ammunition by felons, firearms trafficking, and violent crime. I employ investigative tools such as the use of informants and witnesses, surveillance, controlled purchases of firearms and narcotics, and firearms traces. I have participated in the execution of multiple federal search warrants and arrest warrants related to federal firearms offenses.

3.     This affidavit is submitted in support of a criminal complaint alleging that FLOYD JORDAN violated Title 18, United States Code, Section 922(g)(1). Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging JORDAN with unlawful possession of a firearm by a felon, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are

necessary to establish probable cause to believe that JORDAN committed the offense alleged in the complaint.

4.      This affidavit is based on my personal knowledge, my training and experience, my review of audio and/or video recorded conversations, my review of law enforcement records and court documents, as well as information provided to me by other law enforcement agents and other individuals.

## FACTS ESTABLISHING PROBABLE CAUSE

### A.      Summary of Investigation

5.      In summary, and as further detailed below, on or about June 4, 2025, an ATF confidential source ("CS1")[1] notified ATF personnel that JORDAN was unlawfully dealing firearms. According to CS1, CS1 met JORDAN, a felon, while they were both incarcerated. Through CS1, ATF executed two controlled buys of firearms from JORDAN and other unidentified individuals. The controlled buys occurred on June 5, 2025, and July 14, 2025, and both transactions were recorded. In the June 5 transaction, JORDAN sold CS1 an American Tactical Imports, Model Omni Hybrid, multi-caliber, AR-style pistol, bearing serial number NS145055 ("Firearm 1") with a partially loaded 100-round drum magazine. In the July 14 transaction, JORDAN sold CS1 a loaded, tan Glock Model 19X, 9mm pistol bearing serial number AHMW734

---

[1] CS1 has been a confidential informant for the ATF since approximately 2023 and has provided reliable information that has been corroborated through recorded controlled purchases of narcotics and firearms. CS1 has been convicted of the following felony offenses: receiving/possessing/stealing a stolen vehicle; robbery resulting in bodily injury. CS1 is working with ATF for monetary reasons, and ATF has paid CS1 a total of $104,815 for information CS1 has provided, including approximately $12,000 since the investigation into JORDAN began.

("Firearm 2"). Pursuant to an analysis performed by an ATF firearms expert, Firearm 1 was manufactured in Arizona, and Firearm 2 was manufactured in Georgia. Both firearms therefore traveled in interstate commerce prior to JORDAN's possession of each firearm.

### B. CS1 Identifies JORDAN as Someone Unlawfully Dealing in Firearms.

6. On May 7, 2025, at approximately 1:28 p.m., CS1 sent an ATF agent ("Agent 1") a text message forwarding the information of a contact named "69 Floyd Jordan," whose cellular telephone number was (312) XXX-0579 (the "0579 Number"). Based on Agent 1's prior communication with CS1, Agent 1 understood the text message from CS1 as an indication that the forwarded contact was an individual potentially engaged in firearms or narcotics trafficking.

7. The next day, on May 8, 2025, at approximately 10:24 a.m., Agent 1 met with CS1 in person and showed CS1 an unlabeled photograph of JORDAN from JORDAN's Indiana State Driver's License, as shown below. CS1 positively identified the person in the photograph as JORDAN.



3

8.      On June 4, 2025, at approximately 5:42 p.m., CS1 sent a text message to Agent 1 stating that CS1 had gone to get a haircut from JORDAN at a barbershop, and during the haircut, CS1 had an unrecorded conversation with JORDAN during which JORDAN stated that he had at least one firearm for sale.

9.      After receiving the text message, CS1 and ATF agents met in person later that same day on June 4, 2025. During the meeting, agents again showed CS1 the same unlabeled photograph of JORDAN, and CS1 confirmed that JORDAN, as depicted in that photograph, was the individual CS1 spoke with at the barbershop about the sale of a firearm.

10.     During that same meeting, CS1 told agents that CS1 and JORDAN met while incarcerated and exchanged contact information. CS1 further told agents that he had been communicating with JORDAN at the 0579 Number, which was the number JORDAN had previously provided to CS1. According to CS1, CS1 had been communicating by text message with JORDAN at the 0579 Number since at least on or about May 8, 2025. According to information ATF personnel obtained during a search of a law enforcement database, the 0579 Number is registered to JORDAN.

11.     During the meeting, CS1 also provided additional details about the conversation CS1 had with JORDAN earlier that day during the haircut. Specifically, CS1 told agents that, on June 4, 2025, at approximately 3:00 p.m., CS1 went to JORDAN's place of employment—a barbershop located on the 6500 block of South Ashland Avenue in Chicago, Illinois—for a haircut. During the haircut, CS1 asked JORDAN if he had any firearms for purchase. JORDAN told CS1 that he had two

firearms for sale, including one for $1,400. JORDAN told CS1 that he would send CS1 a picture of the firearm. At approximately 5:59 p.m. the same day, JORDAN, using the 0579 Number, sent CS1 a text message with a picture of an AR pistol with a drum magazine, as depicted in the image below. CS1 responded to the picture with a text message stating "Eeeee I need that let me move some shit around ima hit u," to which JORDAN responded "Bet."



12.     Based on the information CS1 provided the agents during their June 4, 2025 meeting, the agents instructed CS1 to purchase any firearms that JORDAN would be willing to sell CS1.

5

**C.      June 5, 2025, CS1 Purchased Firearm 1 and a Partially Loaded 100-Round Drum Magazine from JORDAN.**

13.      On June 5, 2025, at approximately 9:07 a.m., JORDAN, using the 0579 Number, sent CS1 a text message stating "When it's there uma let u know when to slide," to which CS1 responded "Sayless." At approximately 11:12 a.m., CS1, based on ATF's direction to coordinate the purchase of a firearm from JORDAN, sent JORDAN a text message stating "ima be around like 1 coo?" to which JORDAN responded "Yea…I'm On my way back now."

14.      A short while later, CS1 sent a text message to JORDAN at the 0579 Number stating, "When u thinking cause I ain't go have my driver all day type shit," to which JORDAN responded "Before 3pm," as depicted in the image below.



15. At approximately 3:12 p.m., CS1, and another confidential source ("CS2")[2], met with ATF agents at a predetermined location. ATF agents searched CS1, CS2, and CS1's vehicle for contraband and money, with negative results. CS1 and CS2 were then equipped with concealed audio-visual recording equipment and provided $1,400 in prerecorded funds for the controlled purchase. After the recording equipment was activated, according to the audio-video footage and CS1, CS1 received a call from JORDAN, who was using the 0579 Number. According to CS1, JORDAN told CS1 that the buy location would be on the 5600 block of South Indiana Avenue in Chicago, Illinois. The recording did not capture what was said by JORDAN during that phone call.

16. At approximately 3:15 p.m, surveilling agents arrived at the controlled purchase location. At approximately 3:28 p.m., CS1 and CS2 arrived at the controlled purchase location in CS1's vehicle. At approximately 3:34 p.m., CS1 told agents, via CS1's covert recording equipment, that CS1 saw JORDAN driving a white Chrysler 300 bearing Illinois license plate EZ9***0 (the "Chrysler").[3]

17. At approximately 3:34 p.m., surveilling agents observed the Chrysler arrive. Surveilling agents then observed JORDAN and another black male exit the

---

[2] CS2 has worked as a confidential informant for ATF since approximately February 2022. CS2 is cooperating with ATF in exchange for consideration on federal firearm charges. CS2 has also been paid approximately $31,500 for his/her cooperation with law enforcement. Law enforcement believes CS2 to be a reliable source of information because information provided by CS2 has been corroborated by recorded communications and surveillance and has led to the seizure of firearms and narcotics. CS2 has a prior felony conviction for burglary.

[3] According to law enforcement database search, the Chrysler is registered to JORDAN.

Chrysler and enter a building located on the 5600 block of South Indiana Avenue, as depicted in the images below, which were taken by surveilling agents.



18.     According to CS1 and footage from CS1's recording equipment, at approximately 3:35 p.m., JORDAN called CS1 and told CS1 to come to into a particular residence on the 5600 block of South Indiana Avenue. According to CS1 and footage from CS1's recording equipment, CS1 exited CS1's vehicle without CS2, and once CS1 entered the building, CS1 saw an unknown male ("Individual A") standing at the top of the stairs on a landing between the first and second floors. JORDAN at the time was standing on the stairs between the first and second floors in front of CS1. According to CS1 and footage from CS1's recording equipment, Individual A had a black and white cloth bag at his feet.

19.     According to CS1 and footage from CS1's recording equipment, as CS1 and JORDAN walked up the stairs, Individual A opened the bag to show Firearm 1 to CS1 and what appeared to be a partially loaded 100-round drum magazine. CS1 then handed JORDAN $1,400 in prerecorded funds to complete the transaction. JORDAN proceeded to count the money.

20. According to CS1 and footage from CS1's recording equipment, while JORDAN was counting the money, an unknown woman wearing what appears to be a purple robe ("Individual B") was standing at the top of the stairs on the second floor. Individual B told CS1 that she had "another one" for him. Based on my training and experience and interview with CS1 after this controlled purchase, I believe Individual B's use of the term "another one" to be referring to another firearm that was for sale. Below are two images from the footage of CS1's recording equipment: the first image shows JORDAN standing at the front of the building as CS1 approached, and the second image shows JORDAN and Individual A give some or all the money they collected from CS1 to Individual B.



9



21.     Per surveillance, at approximately 3:38 p.m., CS1 exited the residence and rejoined CS2 in CS1's vehicle. CS1 and CS2 then departed the area to meet with law enforcement back at the predetermined location. At approximately 3:40 p.m., surveilling agents observed JORDAN and Individual A exit the residence where the gun sale took place, enter the Chrysler, and drive away. Surveillance did not follow the Chrysler.

22.     Once at the predetermined location, CS1 gave agents Firearm 1 and the 100-round partially loaded drum magazine. Below are images of Firearm 1 that ATF took after the transaction. ATF agents searched CS1, CS2, and CS1's vehicle for any additional contraband and money, with negative results.



10



### C.      July 14, 2025, CS1 purchased Firearm 2 from JORDAN.

23.      On or about July 13, 2025, at approximately 11:26 a.m., JORDAN, using the 0579 Number, sent CS1 a text message stating "Another joint fa da same ticket," which, based on my experience and training as well as my knowledge of this investigation, meant JORDAN had another firearm for sale for the same price as the last firearm. At approximately 2:39 p.m., JORDAN sent CS1 a picture of what appeared to be tan Glock pistol along with the message "A mf got this for a band."[4] The serial number AHMW734 was visible in the photograph. A few moments later, CS1 texted JORDAN "Dat bitch nice frfr" and "Ima get this bread together and hit u in like a hr." Based on my training and experience, the term "frfr" is an abbreviation for "for real for real," and the term "bread" refers to money. JORDAN responded "Bet." Below are screenshots of the text messages between JORDAN and CS1 referenced in this paragraph:

---

[4] Based on my training and experience, I know the term "a band" to be slang for $1,000.



24.     According to CS1 and information obtained from CS1's phone, CS1 had two unrecorded calls with JORDAN on July 13, 2025. Each call was less than a minute in duration. According to CS1, during the calls, CS1 told JORDAN that CS1 was unavailable to purchase the firearm on July 13 and proposed meeting to complete the transaction the next day, on July 14.

25.     According to CS1 and information obtained from CS1's phone, on July 14, 2025, at approximately 12:08 p.m., CS1 had an unrecorded call with JORDAN, who was using the 0579 Number. The duration of the call was less than a minute.

According to CS1, during the call, JORDAN and CS1 confirmed that the scheduled firearm transaction was going to happen later that day.

26. On July 14, 2025, at approximately 1:27 p.m., CS1 sent JORDAN a text message stating "I'm up here." Approximately one minute later at 1:28 p.m., JORDAN texted "Finne hit da e way now" and "We gone meet on 70th and Emerald at 3pm." From approximately 2:28 p.m. through 3:09 p.m., CS1 and JORDAN exchanged text messages updating each other on arrival times to complete the transaction.

27. At approximately 3:08 p.m., CS1 and CS2 met with ATF agents at a predetermined location. Agents searched CS1, CS2, and CS1's vehicle for contraband and money, with negative results. ATF agents then equipped CS1 and CS2 with concealed audio-visual recording equipment and provided CS1 with $1,000 in prerecorded funds for the controlled purchase. At approximately 3:12 p.m., CS1 and CS2 headed to the agreed upon location followed by law enforcement.

28. At approximately 3:19 p.m., surveilling agents observed CS1 and CS2 arrive at the agreed upon location, which was on the 7100 block of South Emerald Avenue in Chicago, Illinois. CS1 and CS2 parked directly behind the Chrysler.

29. According to CS1 and footage from CS1's recording equipment, at approximately 3:20 p.m., CS1 called JORDAN and told him that CS1 was outside the agreed upon location. According to CS1 and footage from CS1's recording equipment, approximately one minute later, JORDAN exited the driver side of the Chrysler and approached the passenger side of CS1's vehicle. CS2 then got out of the vehicle to let

JORDAN take the front passenger seat of CS1's vehicle, as depicted in the images below of footage from CS'1s recording equipment.





30.     According to CS1 and footage from CS1's recording equipment, once JORDAN was inside the vehicle, CS1 handed JORDAN $1,000 in prerecorded funds, which JORDAN proceeded to count. The sound of the money rustling can be heard in the footage. CS1 asked JORDAN how long it would be before the firearm source arrived, to which JORDAN replied, "He's gonna pull up … like four minutes." JORDAN then exited CS1's vehicle and re-entered the driver's seat of the Chrysler.

31. According to CS1 and footage from CS1's recording equipment, at approximately 3:22 p.m., CS1 saw Individual A (from the June 4, 2025 purchase) arrive at the location.

32. According to CS1 and footage from CS1's recording equipment, at approximately 3:26 p.m., CS1 observed a blue Chevy Malibu, bearing Illinois registration ES***15, arrive near the agreed upon location. Per surveilling agents, an unknown black male ("Individual C") with shoulder-length dreadlocks and wearing a black shirt and tan pants exited the Malibu while carrying a black satchel across his chest. Individual C approached JORDAN as JORDAN exited the Chrysler, and both Individual C and JORDAN proceeded to enter a building on the 7100 block of South Emerald Avenue in Chicago.

33. According to surveilling agents and CS1, after a brief period inside the building, JORDAN and Individual C exited the building. According to CS1 and footage from CS1's recording equipment, at approximately 3:28 p.m., JORDAN approached the CS1's vehicle. According to surveilling agents, CS1, and footage from CS1's recording equipment, JORDAN approached the driver's side of CS1's vehicle, reached into the front waistband area of his clothing, and retrieved Firearm 2. According to CS1 and footage from CS1's recording equipment, as JORDAN handed Firearm 2 to CS1, JORDAN said, "It's loaded but there ain't one in the head." According to CS1 and surveilling agents, JORDAN then handed Firearm 2 to CS1. The video footage does not capture JORDAN handing Firearm 2 to CS1. Below are

15

images from the footage of CS1's recording equipment showing JORDAN walking to the passenger side of CS1's vehicle shortly before giving Firearm 2 to CS1.



34.      According to CS1 and footage from CS1's recording equipment, CS1 and CS2 departed the area at approximately 3:29 p.m., and then proceeded to a predetermined location to meet with law enforcement. Once there, CS1 handed ATF agents Firearm 2, which was loaded. Below is an image of Firearm 2 taken by ATF agents at the predetermined location immediately after the buy. ATF agents searched CS1, CS2, and CS1's vehicle for any additional contraband and money, with negative results.

16



## D.    JORDAN's Criminal History

35.    According to a law enforcement database, JORDAN has the following felony criminal convictions:

a.    December 1, 1999 conviction for manufacturing/delivering a controlled substance in the Circuit Court of Cook County, Illinois, for which he was sentenced to 2 years' probation;

b.    May 2, 2001 conviction for manufacturing/delivering a controlled substance in the Circuit Court of Cook County, Illinois, for which he was sentenced to 4 years' imprisonment;

c.    November 26, 2002 conviction for possession of a controlled substance in the Circuit Court of Cook County, Illinois, for which he was sentenced to 2 years' imprisonment;

d.    A conviction for one count of attempted murder in the Circuit Court of St. Joseph County, Indiana, for which he was sentenced to 20 years' imprisonment on November 2, 2005; and

  e.  January 13, 2020 conviction for armed habitual criminal in the Circuit Court of Cook County, Illinois, for which he was sentenced to 7 years' imprisonment.

  **E.**  **Subject Firearms Information**

36. According to an ATF agent with expertise in evaluating firearms, based on the expert's evaluation of Firearm 1, it was manufactured in the State of Arizona and thus traveled in interstate commerce prior to its arrival in this district.

37. According to the same ATF agent with expertise in evaluating firearms, based on the expert's evaluation of Firearm 2, it was manufactured in the State of Georgia and thus traveled in interstate commerce prior to its arrival in this district.

## CONCLUSION

38. Based on the foregoing, there is probable cause to believe that on or about July 14, 2025, JORDAN violated Title 18, United State Code, Section 922(g)(1).

      FURTHER AFFIANT SAYETH NOT.

      Vincent Turner by MV
      VINCENT TURNER
      Task Force Officer, Bureau of Alcohol, Tobacco, Firearms & Explosives

SWORN TO AND AFFIRMED by telephone July 31, 2025.

Honorable MARIA VALDEZ
United States Magistrate Judge

18